IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARION SKORO, | ) |
| | ) No. CV 06-1319-HU |
| Plaintiff, | ) |
| | ) |
| v. | ) OPINION AND ORDER |
| | ) |
| THE CITY OF PORTLAND, a municipal corporation of the State of Oregon, | ) ) ) |
| | ) |
| Defendant. | ) |

James H. Marvin
Marvin, Chorzempa & Larson
380 S.E. Spokane Street, Suite 300
Portland, Oregon 97202
    Attorney for plaintiff

J. Scott Moede
Senior Deputy City Attorney
Office of City Attorney
1221 S.W. Fourth Avenue, Room 430
Portland, Oregon 97204
    Attorney for defendant

HUBEL, Magistrate Judge:

    This is an action for taking brought by plaintiff Marion Skoro, a property owner, against the City of Portland, Oregon (City).

Opinion and Order Page 1

The issue presented by this case is whether the City can require Skoro, as a condition of developing two pieces of property on SE 52nd Avenue, to dedicate portions of the properties to the City for sidewalks. Skoro contends that the City's requirement constitutes a taking for which the City owes him compensation.

Skoro seeks summary judgment on the issue of whether there has been a taking, reserving the amount of compensation for determination at trial. The City moves for summary judgment on all claims.

**Factual Background**

Skoro owns two parcels of real property located in the City. One is situated at the corner of SE 52nd and Cooper and the other is at the corner of SE 52nd and Woodstock. Skoro is in the process of developing the two properties.

A.   <u>The property on SE 52nd and Cooper</u>

Skoro purchased this property in 1967. The site is zoned CN2 (Neighborhood Commercial 2). The CN2 zoning straddles SE 52nd and extends for about 450 feet on the west and 550 feet on the east side. Moede Affidavit, Exhibit 13, p. 3. The surrounding area contains a mixture of commercial and residential uses and zoning. <u>Id.</u> The CN2 zone is intended for small commercial sites and areas in or near less dense neighborhoods. The zone is intended primarily for the provision of services to nearby residential users and other small-scale, low-impact uses. <u>Id.</u> The property has a six-foot wide sidewalk.

///


Opinion and Order Page 2

Skoro's proposed development of the property on 52nd and Cooper involves demolition of the two existing buildings and construction of a new 7,004 square foot building. Skoro has applied for demolition and building permits. The demolition permit was granted by the City and the two buildings on the property have been demolished.

Skoro made a land use application to the Bureau of Development Services, which resulted in a decision by the City's Bureau of Development Services Land Use Services Division. The decision, dated November 23, 2005, requires, as a condition of constructing the new building, that Skoro dedicate an additional six feet of easement for a sidewalk, thereby expanding the current sidewalk area from six feet to 12 feet. Defendant's Concise Statement of Material Facts ¶ 10, citing Moede Affidavit, Exhibit 13; Skoro Affidavit ¶ 11.

According to Skoro's architect, Bob Schatz, Skoro could put in a 12-foot sidewalk at the 52nd and Cooper location and still be able to build the building he wants, with the same number of parking places and almost exactly the same square footage, although he would have to put the building in a slightly different location. Deposition of Bob Schatz, Moede Affidavit, Exhibit 16 (Schatz dep.) 61:25-62:11.

Skoro states in an affidavit that his property has the only paved sidewalk on its side of SE 52nd for many blocks, with all other sidewalks being dirt paths, although the street is curbed and guttered. Skoro Affidavit ¶ 5. At the end of the sidewalk on

Opinion and Order Page 3

Skoro's property, one steps into gravel or dirt. Id. Skoro states that across the street, there is only one residence with a paved sidewalk, and it is the only sidewalk for many blocks up and down SE 52nd Avenue on the east side. Id. at ¶ 6.

B. The property on SE 52nd and Woodstock

Skoro purchased this property in 1978. The property comprises an auto parts store with a large apartment upstairs and a restaurant. Skoro Affidavit ¶ 17. Skoro proposes to remove the existing buildings and construct a two-story building containing offices and shops. Id. Skoro's development of this property is still at the preliminary stage. Skoro's architect, Schatz, has drawn schematics of a 15,000 square foot building. Schatz dep. 57:2-61:4. The property at 52nd and Woodstock has not been subject to any formal land use process, but the City's assistant engineer, Kurt Krueger, has notified Schatz that development of the property would be conditioned on dedicating an additional two feet on the 52nd Avenue side. See Defendant's Concise Statement of Material Facts ¶ 20; Skoro Affidavit, ¶ 17. The 52nd Avenue side currently has a 10-foot sidewalk. Skoro Affidavit ¶ 17, Amended Affidavit of Kurt Krueger, ¶ 25. The City intends the additional two feet of property dedication to provide space for a six-foot wide "unobstructed pedestrian through zone (sidewalk), a planting strip, which provides a buffer for pedestrians from the roadway, and street trees." Amended Krueger Affidavit ¶ 25.

Schatz has testified that Skoro's dedication of an additional two feet on the 52nd Avenue side would not prevent Skoro from

Opinion and Order Page 4

constructing the proposed building, with the same square footage and number of parking places. Schatz dep. 62:12-18.

### Standard

In <u>Del Monte Dunes at Monterey v. City of Monterey</u>, 95 F.3d 1422, 1428 (9th Cir. 1996), *aff'd,* 526 U.S. 687 (1999), the Court of Appeals held that an "inverse condemnation" claim, requiring a showing that the governmental action did not substantially advance a legitimate public purpose or denied the landowner economically viable use of the property, was a mixed question of law and fact, "which may be submitted to the jury if they are essentially factual, even if they implicate constitutional rights." 95 F.3d at 1428,[1] citing <u>Nollan v. California Coastal Commission</u>, 483 U.S.

---

[1] In affirming <u>Del Monte Dunes</u>, the Supreme Court held that "the issue whether a landowner has been deprived of all economically viable use of his property is a predominantly factual question" for the jury, 526 U.S. at 720, but that the issue of whether a land-use decision "substantially advances legitimate public interests within the meaning of our regulatory takings doctrine" was "probably best understood as a mixed question of fact and law." <u>Id.</u> at 721. <u>Del Monte Dunes</u> was an inverse condemnation claim, with the court holding that the burden was on the property owner to show that the government's actions 1) did not substantially advance a legitimate purpose or 2) denied it economically viable use of its property, citing <u>Nollan</u>, 483 U.S. at 834. The Supreme Court later held, in <u>Lingle v. Chevron U.S.A., Inc.</u>, 544 U.S. 528 (2005), that the "substantially advances a public purpose" element was not a valid method of identifying compensable regulatory takings, because it was in the nature of a due process test, which had no proper place in the Supreme Court's takings jurisprudence. 544 U.S. at 540. Accordingly, the Court overruled <u>Agins v. City of Tiburon</u>, 447 U.S. 255 (1980), where the Court had declared that government regulation of private property "effects a taking if [such regulation] does not substantially advance legitimate state interests..." 447 U.S. at 260. The Court emphasized that, even though <u>Agins</u> had been cited in both <u>Nollan</u> and <u>Dolan v. City of Tigard</u>, 512 U.S. 374 (1994), the "substantially advances" test

Opinion and Order Page 5

825, 834 (1994). The parties agree that the controlling legal authority on the merits of this case is found in the "unconstitutional exactions" cases, Nollan and Dolan.

Governmental regulation categorically violates the Takings Clause if it results in the physical invasion of property. Garneau, 147 F.3d at 807, citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1016 (1992). Both Nollan and Dolan "began with the premise that, had the government simply appropriated the easement in question, this would have been a *per se* physical taking." Lingle, 544 U.S. at 547. The question was whether the government could, without paying the compensation that would otherwise be required upon effecting such a taking, demand the easement as a

---

played no part in Nollan and Dolan, because the Court did not actually apply the "substantially advances" test. Id. at 546. The rule established in Nollan and Dolan was "entirely distinct" from the "substantially advances" test because Nollan and Dolan involved dedications of property so onerous that, outside the exactions context, they would be deemed per se physical takings. Lingle, 544 U.S. at 547. The Court distinguished Nollan and Dolan on the ground that the two cases involved the issue of whether the exactions substantially advanced the same interests that land-use authorities asserted would allow them to deny the permit altogether, not whether the exaction would substantially advance some legitimate state interest. Id. Despite the differences in approach between Del Monte Dunes and Nollan and Dolan, I find no authority from the Court of Appeals or the Supreme Court indicating that the relevant inquiries here are something other than mixed questions of law and fact. Compare Garneau v. City of Seattle, 147 F.3d 802, 813 (1998)(O'Scannlain, C.J., dissenting)("Nollan nexus test and Dolan "rough proportionality" test require "a court" to compare the government's demanded exaction with the expected harm of the landlord's proposed development and "a court" to "calculate the total amount of the exaction to be levied against the landlord bringing the suit," thereby suggesting that both inquiries are questions of law for the court.) Garneau was decided a year before the Supreme Court decided Del Monte Dunes.

Opinion and Order Page 6

condition for granting a development permit the government was entitled to deny. Id. Resolution of the question required consideration of whether the exactions substantially advanced the same interests that land-use authorities asserted would allow them to deny the permit altogether. Id.

In Nollan, the government conditioned a permit to build a larger residence on beachfront property on the dedication of an easement allowing the public to traverse a strip of property between the owner's seawall and the mean high-tide line. The Court struck down the condition on the ground that there was no rational nexus between the condition and the end advanced as its justification:

> It is quite impossible to understand how a requirement that people already on the public beaches be able to walk across the Nollans' property reduces any obstacles to viewing the beach created by the new house. It is also impossible to understand how it lowers any "psychological barrier" to using the public beaches, or how it helps to remedy any additional congestion on them caused by construction of the Nollans' new house. We therefore find that the Commission's imposition of the permit condition cannot be treated as an exercise of its land-use power for any of these purposes.

483 U.S. at 838-39. As the Court said in the later Dolan case,

> [T]he Coastal Commission's regulatory authority was set completely adrift from its constitutional moorings when it claimed that a nexus existed between visual access to the ocean and a permit condition requiring lateral public access along the Nollans' beachfront lot. How enhancing the public's ability to "traverse to and along the shorefront" served the same governmental purpose of "visual access to the ocean" from the roadway was beyond our ability to countenance.

Dolan, 512 U.S. at 387 (internal citation omitted).

///

Opinion and Order Page 7

In <u>Dolan</u>, the Court refined <u>Nollan</u>, holding that an adjudicative exaction requiring dedication of private property must also be roughly proportional, both in nature and extent, to the impact of the proposed development. <u>Dolan</u>, 512 U.S. at 391; <u>Lingle</u>, 544 U.S. at 547. Although, in <u>Dolan</u>, the government passed the essential nexus test, the Court held that the governmental body must also establish the constitutionality of its conditions by making an "individualized determination" that the required dedication is related both in nature and extent to the impact of the proposed development. <u>Dolan</u>, 512 U.S. at 391. The Court held that the city had not established this second, "rough proportionality" requirement.

In <u>Dolan</u>, the city conditioned a permit to expand a store and parking lot on dedication of part of the property as a greenway that included a bicycle/pedestrian walkway. The property owner argued that the city had identified "no special benefits" conferred on her, or any "special quantifiable burdens" created by her new store, that would justify dedications required from her which were not required from the public at large. <u>Id.</u> at 386.

The Court agreed, saying,

> [W]e have no doubt that the city was correct in finding that the larger retail sales facility proposed by petitioner will increase traffic on the streets of the Central Business District. The city estimates that the proposed development would generate roughly 435 additional trips per day. Dedications for streets, sidewalks, and other public ways are generally reasonable exactions to avoid excessive congestion from a proposed property use. But on the record before us, the city has not met its burden of demonstrating that the additional number of vehicle and bicycle trips generated by petitioner's development reasonably relate to the city's

Opinion and Order Page 8

>requirement for a dedication of the pedestrian/bicycle pathway easement.
>
>* * *
>
>No precise mathematical calculation is required, but the city must make some effort to quantify its findings in support of the dedication for the pedestrian/bicycle pathway beyond the conclusory statement that it could offset some of the traffic demand generated.

512 U.S. at 395-96. The court emphasized that if there had been findings that the bicycle pathway system *would* or *was likely* to offset some of the traffic demand, the pathway might pass constitutional muster; but on the facts of Dolan, the finding was merely that the bicycle pathway system *could* offset some of the traffic demand created by petitioner's larger retail facility. Id.

## Discussion

Skoro asks that the court grant him partial summary judgment "on the issue of whether there has been a taking in this matter." Plaintiff's Memorandum, p. 1. Skoro asserts that the "remaining issue concerning the amount of compensation" should proceed to trial. Id. at p. 1-2.

The City asserts that there is no genuine issue of material fact and that because it has demonstrated both the essential nexus and the rough proportionality requirements, the exaction is constitutional.

As the court noted in Garneau, regulatory exactions cases governed by Nollan and Dolan involve a three-part inquiry. The first question is whether a government imposition of the exaction would constitute a taking. See, e.g., Lingle, 544 U.S. at 546 ("In [Nollan and Dolan], the Court began with the premise that, had the

Opinion and Order Page 9

government simply appropriated the easement in question, this would have been a *per se* physical taking."[citations omitted]). In Nollan and Dolan, the Supreme Court

> had no trouble ... finding that government imposition of the exaction would amount to a taking," because in both cases the government demanded permanent physical occupation of some portion of the applicant's land. Courts have generally found that where government action leads to the physical invasion of private property, it constitutes a per se taking. ... By contrast, in non-categorical takings cases, courts must undertake complex factual assessments of the purposes and economic effects of government actions. Because of the difference in the Court's approach, much turns on the classification of the government's action.

Garneau, 147 F.3d at 807-08. This case, like Nollan and Dolan, involves a demand by the City that it be granted permanent physical occupation of some portion of Skoro's land; thus, the first Nollan-Dolan inquiry must be answered affirmatively. Garneau, 147 F.3d at 809, citing Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 433 (1982); Levald v. City of Palm Desert, 998 F.2d 680, 684 (9th Cir. 1993).

The court must then consider the second and third inquiries, which "seek to determine whether the government may shield itself from a takings claim through the use of its police powers." Garneau, 147 F.3d at 810. In this case, the City has made an "adjudicative decision to condition [an] application for a building permit on an individual parcel;" consequently, the burden is on the government to establish both an "essential nexus"[2] between the

---

[2] As explained in the preceding footnote, in Lingle, the Court characterized "essential nexus" as a requirement that the governmental entity prove the exaction substantially advanced the same interests that land-use authorities asserted would allow

Opinion and Order Page 10

exaction and the burdens imposed by the development, and "rough proportionality" between the condition imposed and the social harm caused by the proposed development. Dolan, 512 U.S. at 391 n. 8.

A. The Record on Summary Judgment

The City has proffered the affidavit of Kurt Krueger, containing the supporting analysis for the City's sidewalk dedication requirements for SE 52nd and Cooper and SE 52nd and Woodstock. Krueger's analysis is offered as evidence that the sidewalk dedications in this case--a six-foot strip at 52nd and Cooper and a two-foot strip at 52nd and Woodstock--satisfy the requirements of a "rational nexus" and "rough proportionality" between the exaction and the impact of the proposed development. See Dolan, 512 U.S. at 391; Lingle, 544 U.S. at 546-47.

Skoro has proffered the affidavit of Bruce Schafer, a traffic engineer, to counter the Krueger affidavit.

 1. Krueger Affidavit

Krueger is employed by the City's Bureau of Transportation Engineering and Development as a Development Review Manager, and evaluated land use issues involving Skoro's two properties.

With respect to the SE 52nd and Cooper site, Krueger opines that although Skoro's building permit application for 7,045 square feet of retail use is the "highest and best use" for the site's CN2 zoning, the Institute of Transportation Engineers (ITE) Trip Generation Manual predicts that Skoro's proposed development will generate 260 new trips on the site's transportation system. Amended

---

them to deny the permit altogether.

Opinion and Order Page 11

Affidavit of Kurt Krueger, ¶ 10. Krueger states that the "addition of the site trips" to SE 52nd Avenue will "directly conflict" with pedestrians, bicyclists and vehicles that enter SE 52nd Avenue through the corridor or that are on SE 52nd Avenue at this location. Id. at ¶ 9.

Krueger states that the additional six feet of property dedication sought by the City from Skoro "will provide space for a 6-foot wide unobstructed pedestrian through zone (sidewalk), a planting strip, which provides a buffer for pedestrians from the roadway, and street trees." Id. at ¶ 14. The sidewalk improvement envisioned by the City on Skoro's property includes removal of the six-foot wide curb-tight sidewalk, its relocation and re-construction as a new six-foot-wide sidewalk, and installation of a four and a half foot wide furnishings zone with street trees. Id. at ¶ 16. These improvements are consistent with the "Portland Pedestrian Design Guide" (Pedestrian Guide), an element of the Pedestrian Master Plan for the City, developed by the City in June 1998. Krueger Affidavit, Exhibit 12. The purpose of the Pedestrian Guide is

> to integrate the wide range of design criteria and practices into a coherent set of new standards and guidelines that, over time, will promote an environment conducive to walking.

Id. at p. 2.

According to Krueger, the dedication of an additional six feet at the SE 52nd and Cooper site for sidewalk and sidewalk improvements along SE 52nd will provide the following benefits:

Opinion and Order Page 12

1.   Increased pedestrian/bicycle and vehicle access to the property.
2.   Direct access for emergency vehicles, thereby reducing emergency response times.
3.   Provision of an area for efficiently locating utilities in the public right-of-way.
4.   Provision of adequate area to reduce congestion from future pedestrian traffic.
5.   Enhancement of the value of the property with increased sidewalk that "allows for outdoor seating, advertising, street trees, etc. to be located along the building in the right-of-way."

Id. at ¶ 20.

With respect to the site at SE 52nd and Woodstock, Krueger states that Skoro's proposed development is the highest and best use for the site zoning. Krueger ¶ 21. The ITE Trip Generation Manual predicts that Skoro's proposed development would add 69 new site trips to the transportation system. Id. The existing sidewalk of the SE 52nd and Woodstock site is 10 feet wide. Krueger states that the additional two feet of property dedication sought by the City from Skoro "will provide space for a 6-foot wide unobstructed pedestrian through zone (sidewalk), a planting strip, which provides a buffer for pedestrians from the roadway, and street trees." Id. at ¶ 25. Krueger cited the same benefits from the additional two feet of property dedication at SE 52nd and Woodstock that would accrue from the additional six feet of sidewalk

Opinion and Order Page 13

1  dedication at SE 52nd and Cooper. Id. at ¶ 30.

2  Krueger has provided calculations described as a
3  "proportionality analysis," in which he calculates the "percentage
4  of impacts" from the proposed development; the "percentage of
5  exaction area" based on the total site area; the percentage of the
6  exaction area to the total corridor area; and the site improvement
7  cost as a percentage of a total corridor improvement cost. His
8  conclusion is that the dedication and construction of sidewalk
9  improvements is "roughly proportional" to the expected impacts to
10 the pedestrian corridor.

11           2.    Schaefer Affidavit

12  Schaefer is a licensed traffic engineer, now working as a
13 consulting engineer. Schafer states that he has made site visits to
14 both locations involved in this case. Based on these preliminary
15 views, he has "serious questions as to the basis and the magnitude
16 of the sidewalk improvements demanded by the City of Portland."
17 Affidavit of Bruce Schafer ¶ 3.

18  Schafer says the development proposed by Skoro of the SE 52nd
19 and Cooper property "squarely meets" the Brentwood-Darlington
20 Neighborhood Plan, see Affidavit of Scott Moede, Exhibit 17, while
21 there is no neighborhood plan that covers the SE 52nd and Woodstock
22 property. Id. at ¶¶ 5, 10.

23  Schafer states that 12-foot sidewalks are not required, or
24 even recommended, by the Neighborhood Association, id. at ¶ 6, and
25 that in his opinion, Skoro's proposed development of his properties
26 satisfies the Neighborhood Association's stated goals of
27
28 Opinion and Order Page 14

maintaining and improving the predominantly residential character of the neighborhood; attracting new businesses in the commercial zones; and revitalizing the 52nd Avenue commercial areas through rehabilitation and upgrading. Id.

Schafer says he has observed that "only a few" of the properties adjacent to the SE 52nd and Cooper property have any sidewalks at all. Id. at ¶ 7.

In Schafer's opinion, the existing six foot sidewalk at the SE 52nd and Cooper property is "sufficient to handle present and long-term future pedestrian traffic," and "[t]here is no basis or purpose for any increased width to Skoro's sidewalk." Id. at ¶ 8.

Schaefer also notes an "inconsistent application" of the Pedestrian Guide by the City just north of Skoro's property, across Cooper Street on the west side of 52nd. At that location, there is a sidewalk with a utility pole that has a surface width of two feet nine inches, due to the pole's presence. According to Schaefer, the sidewalk "does not comply with ADA minimum requirements of 36 inches travel surface." Id. at ¶ 9.

Schafer says that in reviewing Krueger's affidavit,

> I note that he suggests the corridor area cross-section shows a 12 foot wide sidewalk on each side of the street. I find this is not apparent anyplace near the SE 52nd and Cooper property...

Id. at ¶ 10.

Schafer states that based upon the National Highway Capacity Manual, Special Report, Transportation Research Board 209, of the National Research Council, which is referenced in the Pedestrian Guide, "the anticipated residential volume and density should be a

Opinion and Order Page 15

"Level A" or a "Level B" at SE 52nd and Cooper, and a "Level B" or a "Level C" at SE 52nd and Woodstock, which "means that via the national standard, a six foot sidewalk at SE 52nd and Cooper is sufficient to carry existing and future pedestrian traffic volume." Id. at ¶ 14. Schafer says this "also means ... that a ten foot wide sidewalk [i.e., the ten foot wide sidewalk that now exists] at SE 52nd and Woodstock is sufficient to carry existing and future pedestrian traffic volume." Id. at ¶ 14. Schafer opines that there is no "reason or necessity for a requirement to increase the sidewalk size on the SE 52nd Avenue side of Mr. Skoro's property from 10 foot to 12 foot [sic]." Id. at ¶ 12.

### 3. Jeffrey Affidavit

In its reply materials, the City has proffered the affidavit of Jeanne-Marie Jeffrey, a traffic engineer for the City. She takes issue with Schafer's statement that the National Highway Capacity Manual suggests that no more than a six foot sidewalk is necessary at the SE 52nd and Cooper location, because

> Mr. Schafer's Affidavit ignores the fact that the City of Portland's Pedestrian Design Guide also suggests a 6-foot-wide "through pedestrian zone" with an additional six feet, accounting for the curb zone, furnishing zone and frontage zone. ... Mr. Schafer's Affidavit makes no provision for curb zone, furnishing zone and frontage zone for the sidewalk corridor proposed by plaintiff. Mr. Schafer did not acknowledge appropriate provisions for common street furniture and utilities including streetlights, power poles, street trees, fire hydrants, mailboxes, newspaper racks, and street signs. Specifically, in retail environments, such as that proposed by the plaintiff, sidewalk cafes and other advertising elements would potentially compete for this space as well.

Jeffrey Affidavit ¶ 5.

Opinion and Order Page 16

B. <u>Essential nexus</u>

The City argues that proof of an essential nexus is contained in 1) the Pedestrian Guide, recommending 12-foot wide pedestrian corridors for walkways adjacent to Neighborhood Collector Streets, as SE 52nd is; 2) the Brentwood-Darlington Neighborhood Plan, adopted by the City Council in 1992, which recognizes SE 52nd Avenue as one of three area streets with commercial areas and contains eight policies intended to strengthen, expand and develop those commercial areas; and 3) a March 14, 2006 letter from Krueger to Skoro's attorney, Krueger Affidavit Exhibit 5, stating that the proposed development at SE 52nd and Cooper increases the building footage by approximately 2,239 square feet, with a projected increase in vehicle trips of approximately 25 vehicles per day.

I conclude that the record reveals genuine issues of material fact on the issue of whether the six-foot sidewalk dedication at SE 52nd and Cooper has an essential nexus to the impact of the proposed development. A trial on the taking and, if one is found, the damages issue, remain for the SE 52nd and Cooper property.

With respect to the two-foot sidewalk dedication at SE 52nd and Woodstock, I conclude that no reasonable jury could find a reasonable nexus between the exaction and the impact of the proposed development, so that Skoro is entitled to summary judgment on the taking issue. A trial on damages only for the SE 52nd and Woodstock property remains.

Krueger states that the impact of the proposed developments by Skoro is the addition of site trips to SE 52nd, adversely affecting

Opinion and Order Page 17

pedestrians, bicyclists and vehicles using SE 52nd. But as Krueger explains in his affidavit, the City's requirement that Skoro dedicate an additional six feet of his property at SE 52nd and Cooper will force the re-location of the sidewalk, without changing its six-foot width; the additional six feet required by the City is, according to Krueger, to be used for a furnishings zone (a planting strip and street trees) and a frontage zone with a width of one foot six inches. See Krueger Affidavit, Exhibit 12, pp. 15-17 and 22.  On the record before the court, there are genuine issues of material fact on whether the exaction at issue here, requiring Skoro to move the sidewalk from its present location without increasing its width, and dedicating an additional six feet to a furnishings zone four feet six inches wide (for a planting strip and street trees) and a frontage zone with a width of one foot six inches, substantially advances the same interests that would allow the City to deny the permit altogether, i.e., the impact of increased site trips on pedestrians, bicyclists, and vehicles. Nor can the court determine whether the exaction would affect emergency vehicle access, utility location, or increased sidewalk area for outdoor seating or advertising. Because of these fact issues, I conclude that neither Skoro, nor the City is entitled to summary judgment in its favor with respect to any issue for the property at SE 52nd and Cooper. See, e.g., <u>State of California v. Campbell</u>, 319 F.3d 1161, 1166 (9th Cir. 2003)(genuine issue of material fact arises if evidence is such that a reasonable jury could return a verdict for the nonmoving party).

Opinion and Order Page 18

As for the property at SE 52nd and Woodstock, no reasonable jury could find that the exaction required of Skoro by the City has an essential nexus with the impact of Skoro's proposed development. The City's permit condition is that Skoro dedicate an additional two feet of the property so that the existing 10-foot-wide sidewalk can be replaced by a a six-foot-wide sidewalk relocated so as to provide a furnishings zone four feet six inches wide and a frontage zone one foot six inches wide. The City attempts to justify this exaction on the ground that Skoro's proposed development will increase the number of site visits, creating an impact on pedestrian, bicycle and vehicle traffic. *Reducing* the width of the sidewalk from 10 feet to six feet, thereby subtracting four feet of existing sidewalk, will in no way alleviate the pressure of increased site visits. Nor does adding four feet six inches for a planting strip and street trees, at the expense of four feet of existing sidewalk, have any reasonable nexus with the benefits enumerated by Krueger in his affidavit: increased pedestrian, bicycle and vehicle access; greater access for emergency vehicles; additional space for utilities, or providing more sidewalk for outdoor seating and advertising. I conclude that Skoro is entitled to summary judgment on the takings issue with respect to the SE 52nd and Woodstock property.

C. Rough proportionality

My determination that fact issues preclude a determination that either side has prevailed on the "essential nexus" part of the Nollan-Dolan test for the SE 52nd and Cooper property, and that the

Opinion and Order Page 19

City has failed as a matter of law to demonstrate an "essential nexus" for the SE 52nd and Woodstock property, make it unnecessary for me to reach the issue of "rough proportionality" for either property on these cross motions for summary judgment.

## Conclusion

The City's motion for summary judgment (doc. # 34) is DENIED. Skoro's motion for summary judgment (doc. # 30) is GRANTED with respect to the SE 52nd and Woodstock property and DENIED with respect to the SE 52nd and Cooper property.

IT IS SO ORDERED.

Dated this 21st day of February, 2008.

/s/ Dennis James Hubel

Dennis James Hubel
United States Magistrate Judge

Opinion and Order Page 20